PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BASE METAL TRADING, LIMITED,
        *Plaintiff-Appellant,*

v.

OJSC "NOVOKUZNETSKY ALUMINUM
FACTORY,"
        *Defendant-Appellee,*

MG METAL AND COMMODITY
CORPORATION; MG METAL AND
COMMODITY COMPANY, LIMITED,
        *Movants.*

No. 01-1916

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-00-1973-MJG)

Argued: January 23, 2002

Decided: March 6, 2002

Before WILKINSON, Chief Judge, and WILKINS and GREGORY,
Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Wilkins and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Dennis L. Scanlon, MARKS, L.L.C., Philadelphia, Penn-
sylvania, for Appellant. Mark D. Gately, HOGAN & HARTSON,

L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Bruce S. Marks, MARKS, L.L.C., Philadelphia, Pennsylvania, for Appellant. Steven F. Barley, Douglas R.M. Nazarian, HOGAN & HARTSON, L.L.P., Baltimore, Maryland, for Appellee.

## OPINION

WILKINSON, Chief Judge:

Plaintiff Base Metal Trading, Inc. ("Base Metal"), a Guernsey, Channel Island corporation brought the present action to confirm a foreign arbitration award against Defendant OJSC "Novokuznetsky Aluminum Factory" ("NKAZ"), a Russian corporation. The district court dismissed the case for lack of personal jurisdiction over NKAZ. Because the mere presence of seized property in Maryland provides no basis for asserting jurisdiction when there is no relationship between the property and the action, we affirm.

I.

From 1995 to 1999, plaintiff Base Metal, a Guernsey, Channel Islands corporation engaged in trading in raw materials associated with the aluminum industry, had various business dealings with defendant NKAZ, a Russian corporation engaged in the manufacture and sale of aluminum. A dispute arose between the two parties and in 1999, they agreed to arbitrate the dispute in the private Commercial Arbitration Court of the Moscow Chamber of Commerce and Industry. On December 10, 1999, the Commercial Arbitration Court issued an arbitration award in favor of Base Metal in the amount of approximately $12,000,000. However, Base Metal was unable to collect the award at that time.

On June 29, 2000, Base Metal filed a Verified Complaint to Confirm a Foreign Arbitration Award in Maryland district court, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), implemented by 9 U.S.C. §§ 201 *et seq*. On that same day, Base Metal filed a motion seeking seizure or attachment of an aluminum shipment alleged to belong to NKAZ

that had arrived in Baltimore Harbor on June 28. *See* Fed. R. Civ. P. 64. The attachment motion was granted by the district court and the property was taken into custody by the U.S. Marshal. Shortly thereafter, MG Metal & Commodity Corp. and MG Metal & Commodity Co., Ltd. (collectively "MG") claimed ownership of the seized aluminum and moved to vacate the attachment. On July 7, 2000, the district court issued an order vacating the attachment, giving custody and control over the aluminum to MG, and providing for the placement into an escrow account of any funds derived from the sale of the aluminum.[1]

On September 7, 2000, Base Metal filed an affidavit stating that on August 15, 2000, a copy of the summons and complaint was sent to NKAZ. However, NKAZ did not respond.[2] On January 18, 2001, Base Metal moved for a default judgment against NKAZ. The district court granted the motion and entered a default judgment against NKAZ in the amount of $13,767,541.51. Upon learning of the default judgment, NKAZ moved to vacate it and to have the case dismissed for, *inter alia*, lack of personal jurisdiction.

On April 3, 2001, the district court dismissed the case for lack of jurisdiction. The court noted that NKAZ's contacts with Maryland related exclusively to the fact that aluminum manufactured by NKAZ in Russia was unloaded in Baltimore Harbor. And the court held that, "By no stretch could the single shipment, or even several such shipments, constitute continuous and systematic contacts with Maryland so as to justify general jurisdiction over NKAZ."

Base Metal filed a motion for reconsideration seeking to have the court exercise jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure which provides that a district court may exercise jurisdiction over a defendant if: (1) the plaintiff's claim "arise[s] under federal law;" (2) the defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction "is consistent with the Constitution and

---

[1] Ultimately, Base Metal declined to pursue any claim against MG in the district court, so the present action involves only Base Metal and NKAZ.

[2] NKAZ also alleged that service was not proper. The district court, however, determined that the validity of the service was not necessary to its ruling.

laws of the United States." Fed. R. Civ. P. 4(k)(2). The court determined that in order to exercise jurisdiction under Rule 4(k)(2) it had to find that no other state court had jurisdiction over NKAZ. And in light of cases pending in other courts in which Base Metal was arguing strenuously that NKAZ had sufficient contacts to warrant the exercise of personal jurisdiction, such a finding would be difficult and would usurp "the opportunity for sister federal courts to exercise jurisdiction which they may decide they have." Therefore, the court declined to apply Rule 4(k)(2). Base Metal appeals.

## II.

Base Metal argues that the presence of NKAZ's property in Maryland confers jurisdiction over NKAZ for the purpose of confirming and enforcing the foreign arbitration award.

## A.

As a preliminary matter, the Convention and its implementing legislation, 9 U.S.C. §§ 201 *et seq.*, give federal district courts original jurisdiction over actions to compel or confirm foreign arbitration awards. *See* 9 U.S.C. §§ 203, 207. However, while the Convention confers subject matter jurisdiction over actions brought pursuant to the Convention, it does not confer personal jurisdiction when it would not otherwise exist. In other words, a plaintiff still must demonstrate that personal jurisdiction is proper under the Constitution. *See Transatl. Bulk Shipping, Ltd. v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985).

The personal jurisdiction inquiry is a well-established one. Determining whether jurisdiction is proper is normally a two step process: (1) determining if the state's long-arm statute confers jurisdiction and (2) whether the exercise of jurisdiction, if authorized, is consistent with the Due Process requirements of the Fourteenth Amendment. Since Maryland's long-arm statute expands the exercise of personal jurisdiction to the limits allowed by the Due Process Clause, the two-step analysis merges in this case and the question is simply whether the exercise of personal jurisdiction would be consistent with due process. *See Ellicot Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Yangming Marine Transp. Co. v. Revon Prods. U.S.A, Inc.*, 536 A.2d 633, 636 (Md. 1988). Due process requires only that a defendant "have certain minimum contacts with

[the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyers*, 311 U.S. 457, 463 (1940)). For these minimum contacts to exist, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

In examining whether the exercise of jurisdiction is reasonable, a distinction is made between specific and general jurisdiction. When the cause of action arises out of the defendant's contacts with the forum, a court may seek to exercise specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416; *see also Goodyear Tire & Rubber Co. v. Ruby*, 540 A.2d 482, 486-87 (Md. 1988).

This basic analysis is not altered when the defendant's property is found in the forum state. The Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977), eliminated all doubt that the minimum contacts standard in *International Shoe* governs *in rem* and *quasi in rem* actions as well as *in personam* actions. *Shaffer*, 433 U.S. at 207-12. The Court held that "in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." *Id.* at 207 (internal quotations omitted). And "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Id.*

Of course, the presence of property in a state may have an impact on the personal jurisdiction inquiry. Indeed, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id.* Yet, when the property which serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action, the presence of property alone

will not support jurisdiction. *Id.* at 209. While, "the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation," when those "other ties" do not exist, jurisdiction is not reasonable. *Id.*

Overall, courts "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" when determining whether the exercise of jurisdiction is reasonable in any given case. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). And "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114. But, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* We must, therefore, examine whether Base Metal has alleged significant minimum contacts between NKAZ and Maryland to justify the exercise of jurisdiction on the Russian corporation in this case.

B.

Base Metal contends that Maryland has jurisdiction to confirm the foreign arbitration award in large part because 2,563 tons of aluminum, alleged to be the property of NKAZ, arrived in Baltimore Harbor. Because Base Metal does not contend that this action arises out of NKAZ's alleged contacts with Maryland, there is no assertion of specific jurisdiction. Base Metal only alleges that the district court has general jurisdiction over NKAZ. Therefore, due process requires Base Metal to establish that NKAZ's contacts with Maryland are "continuous and systematic." *See Helicopteros*, 466 U.S. at 416. Yet, sufficient minimum contacts are simply not present in this case.

Base Metal focuses on one shipment of aluminum to Maryland as a basis for jurisdiction, but it is not clear that the aluminum in question belonged to NKAZ. Even assuming, however, that the aluminum did belong to NKAZ, this single shipment does not amount to "continuous and systematic" contacts. There is no dispute that the aluminum bears no relationship to the arbitration award Base Metal seeks to confirm. And Base Metal has failed to show that NKAZ has "pur-

posefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253.

Indeed, the evidence fails to demonstrate NKAZ even attempted to do business in Maryland at all. NKAZ is a Russian corporation with its principal place of business in Novokuznetsk, Kemerevo Oblast, Russia. The evidence shows that NKAZ's business consists entirely of manufacturing aluminum in its Russian plant and it does not maintain an office of any kind outside of Russia. NKAZ does not contract directly with American companies or purchasers. It has no sales force or other agents in the United States. NKAZ has no subsidiaries, affiliates or shareholders in Maryland. Nor has it ever been authorized to do business in Maryland, transacted or solicited business in Maryland, or designated an agent to accept service of process in Maryland. NKAZ also neither owns nor rents any property in Maryland, has never conducted a financial transaction in Maryland, and has no assets of any kind in Maryland.

The mere fact that metal NKAZ manufactured in Russia was shipped to the United States does not amount to significant contacts with Maryland. Nor do vague references to possible contacts with New Jersey, "negotiations" with Kaiser Aluminum Company, "negotiations" in 1997 and 1998 in Pittsburgh concerning a possible joint venture with Alcoa, purchases of secondary aluminum from the United States in 1994 and 1995, other vague allegations of "negotiations" in the United States in 1998, and the attendance of NKAZ representatives at trade conferences in the United States amount to systematic contacts with the United States, much less Maryland. Base Metal simply cannot support jurisdiction in Maryland by making vague, unsubstantiated claims based on the affidavit of a former NKAZ employee. Without establishing the minimum contacts required by *International Shoe* and *Shaffer*, the burdens the exercise of jurisdiction would place on NKAZ simply cannot be justified.

Furthermore, Base Metal has failed to demonstrate what, if any, interest Maryland has in the resolution of this dispute. NKAZ is not a Maryland corporation and does no business in Maryland. The dispute that led to the arbitration award has nothing to do with the United States or Maryland. And even more telling, Base Metal itself

is not a Maryland corporation, nor is its principal place of business in Maryland or even in the United States. The fact that the plaintiff in this case is not a Maryland corporation or resident "considerably diminish[es]" Maryland's interest in the dispute. *Asahi Metal Industry Co.*, 480 U.S. at 114. While it is true that there is a general public policy interest in encouraging and enforcing arbitration agreements, that interest is not paramount to the interests protected by the Due Process Clause.

### III.

As a final attempt to assert jurisdiction, Base Metal argues that jurisdiction is proper under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2) allows a federal court to assert jurisdiction in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state court, but has contacts with the United States as a whole. A plaintiff who seeks to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim "arise[s] under federal law;" (2) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and laws of the United States." Fed. R. Civ. P. 4(k)(2).

Thus, for jurisdiction over NKAZ to be proper under Rule 4(k)(2), Base Metal must demonstrate that NKAZ is not subject to personal jurisdiction in any state and that NKAZ's contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41, 45 (1st Cir. 1999); Fed. R. Civ. P. 4(k)(2) advisory committee note. This Base Metal has failed to do. Base Metal has never attempted to argue that NKAZ is not subject to personal jurisdiction in any state. In fact, Base Metal continues to assert that personal jurisdiction over NKAZ is proper in Maryland as well as in other states. While, as the district court noted, "it is generally permissible for a litigant to present inconsistent alternate positions in a case," the problem here is that to determine that another state lacks jurisdiction would require us to decide a question currently pending before at least one of our sister circuits.

Even assuming that Base Metal could successfully argue that NKAZ is not subject to personal jurisdiction in any state, Base Metal has failed to proffer any evidence to demonstrate that NKAZ has sufficient contacts with the United States as a whole to justify general personal jurisdiction. Even when the allegations and declarations before the district court are credited, the contacts relied upon by Base Metal are insufficient. Base Metal's declarations and allegations are simply unsubstantiated statements asserting that NKAZ is a major aluminum producer in Russia and has "extensive business contacts inside Russia as well as around the world including in the United States." Base Metal offers no concrete evidence of what these business transactions are. As we have explained, NKAZ's alleged contacts with the United States appear sparse and limited to a few shipments of aluminum arriving in American ports. It is not clear why the limited resources of the federal courts should be spent resolving disputes between two foreign corporations with little or no connection to our country. And the burdens of subjecting a foreign company to suit in this country in this case are not justified. Therefore, a finding of jurisdiction in this case would turn the notion of "fair play and substantial justice" on its head.[3]

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[3]Base Metal also contends that the district court abused its discretion by failing to permit jurisdictional discovery. However, the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court. *See, e.g.*, *Cent. States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 792 (4th Cir. 1988). And where, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, we see no reason to overturn the district court's exercise of discretion.