**STRATAGENE**

v.

**PARSONS BEHLE & LATIMER, et al.**

No. CIV.A.DKC 2003–1703.

United States District Court,
D. Maryland.

April 29, 2004.

See also 225 F.Supp.2d 608.

Read K. McCaffrey, Christopher Hell-mich, Patton Boggs LLP, Washington, DC, for Plaintiff.

Pamela Anne Bresnahan, Vorys Sater Seymour and Pease LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this legal malpractice case is the motion by Defendants Parsons Behle & Latimer (Parsons) and the named individual attorneys to dismiss or, in the alternative, to transfer venue. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will grant the motion to dismiss as to the law firm and attorneys Roche and Wikstrom, and will deny the motion as to attorney Pierce.

## I. Background

Plaintiff Stratagene is engaged in ongoing patent infringement litigation in this court with Invitrogen Corporation (Invitrogen), the defendant in the action (Invitrogen litigation). During the course of that litigation, Plaintiff discovered that Vanessa Pierce, one of the attorneys for then-counsel to Invitrogen, Defendant Parsons Behle & Latimer (Parsons), previously had represented Plaintiff at her prior firm in patent matters. Plaintiff moved to disqualify both the attorney, Pierce, and her firm, Parsons, from the case. This court granted Plaintiff's motion, finding that Pierce had worked at her prior firm on matters "substantially related" to those in the Invitrogen litigation and that "Parsons has not sheltered itself from imputed disqualification" by failing to screen Pierce from participation in the Invitrogen litigation. *Stratagene v. Invitrogen Corp.*, 225 F.Supp.2d 608, 613–14 (D.Md.2002). On June 10, 2003, Plaintiff filed a six-count complaint for legal malpractice and negligence against Parsons (counts three and six), Pierce (counts one and two), and two other firm attorneys, Kent Roche (count four) and Francis Wikstrom (count five).

## II. Personal Jurisdiction

### A. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Maryland*, 334 F.3d at 396. *See also Mylan Labs.*, 2 F.3d at 60; *Combs*, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst of Maryland*, 334 F.3d at 396.

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993). Maryland's long-arm statute, Md.Code Ann., Cts. & Jud. Proc. § 6–103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir.2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212–13 (4th Cir.), *cert. denied*, 537 U.S. 822, 123 S.Ct. 101, 154 L.Ed.2d 30 (2002). Thus, the inquiry for the court is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe*

*Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Base Metal Trading, Ltd.,* 283 F.3d at 213.

 The crucial issue is whether the contacts of each defendant with the forum state, here Maryland, are substantial enough that a defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant has fair warning that the defendant might be subject to a forum's jurisdiction if the defendant purposefully directs activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there—and thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174.

### B. Analysis

 At this stage, Plaintiff must make a *prima facie* showing of personal jurisdiction by demonstrating that each defendant is subject to Maryland's long-arm statute, which confers personal jurisdiction over a party who, *inter alia,*

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State[.]

Md.Code Ann., Cts. & Jud. Proc. §§ 6–103(b)(1),(2). As Plaintiff aptly notes, each cause of action in the instant case "arises directly from the Defendants' actions and conduct in the underlying case *Stratagene v. Invitrogen Corporation* ... currently pending before this Court." Paper 7 at 3.

Plaintiff alleges that each Defendant performed work and services in Maryland in the Invitrogen litigation, and that Defendant Parsons contracted with Invitrogen to provide legal services here. In fact, two Parsons attorneys, Defendant Wikstrom and Hal Pos, acknowledged that at the time Invitrogen retained Parsons in 1995, "Invitrogen was located in Maryland" and did not relocate its principal office to California until March 2002—a period of seven years. Paper 6, Ex. 1 at ¶ 4, Ex. 4 at ¶ 4. The Invitrogen litigation commenced in November 2001, which means that Defendants represented Invitrogen in the underlying action for four months while Invitrogen was based in Maryland. These factual circumstances, taken together and unchallenged by Defendants, are sufficient to confer personal jurisdiction upon the Defendants in this court.[1]

---

1. Defendants cite a number of cases outside of this jurisdiction in arguing that this court lacks personal jurisdiction, but these cases are inapposite. For instance, in *Star Tech., Inc. v. Tultex Corp.,* 844 F.Supp. 295 (N.D.Tex.1993), the court found jurisdiction lacking over the nonresident defendant attorney who had traveled to Texas twice in connection with the representation of his client. However, in *Star Tech.,* unlike this case, the

Where Defendant Wikstrom, on behalf of Defendant firm Parsons and with assistance from Defendant Pierce, represented Invitrogen in the underlying litigation solely and entirely in this court, and committed the alleged malpractice in conducting that litigation here, Defendants strain the bounds of credibility by arguing they could not reasonably anticipate being haled into this court to defend against these claims. *See* Paper 8 at 6. In deciding initially to represent Invitrogen, then headquartered in Maryland, Defendants transacted business and contracted to provide services to Invitrogen here. Indeed, with regard to Defendants' representation of Invitrogen in the underlying litigation, Plaintiff's instant "cause of action arose directly from those activities." *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir.1990).[2] Therefore, personal jurisdiction is proper under the Maryland long-arm statute.

Moreover, the litigation that gives rise to the conflict of interest claim has always been in this court. The only reason counsel might not have been physically present here is this court's election to decide the disqualification motion on the papers without a hearing. Those attorneys who signed the documents knew they would be presented to a court here in Maryland. In particular, Defendant Wikstrom appeared *pro hac vice* in the underlying litigation in this court, while he and Defendants Pierce

and Roche all signed declarations in support of Invitrogen's opposition response.

For these reasons, Maryland has a strong interest in hearing Plaintiff's claims, and the tenets of judicial efficiency likewise dictate retention of this case. *Cf. McGann v. Wilson*, 117 Md.App. 595, 606, 701 A.2d 873, 878 (1997) (no personal jurisdiction over Virginia attorney in Maryland as, *inter alia*, "Maryland has virtually no interest in a malpractice claim tried in Virginia under Virginia law"); *Cape v. von Maur*, 932 F.Supp. 124, 128 (D.Md.1996) ("Maryland's exercise of personal jurisdiction in this case—enforcing the claim of a Virginia-based corporation against attorneys in Germany for services rendered in Germany—is hardly reasonable"). Accordingly, Defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction will be denied.

### III. Venue

#### A. *Standard of Review*

Defendants have moved to dismiss for improper venue or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a) to Utah. A plaintiff may properly bring a federal diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

---

allegations against the attorney stemmed from conduct that preceded the litigation and thus did not arise from any ongoing underlying litigation in Texas.

More analogous to the instant case is *Trinity Indus., Inc. v. Myers & Assoc.*, 41 F.3d 229 (5th Cir.), *cert. denied*, 516 U.S. 807, 116 S.Ct. 52, 133 L.Ed.2d 17 (1995). In *Trinity Indus.*, the court held that personal jurisdiction was proper over the nonresident defendant attorneys in Texas due to their representation of the Texas-based client over the course of eight years. The court concluded that "[t]he record reflects a factual scenario sufficient to support an inference that the defendants pur-

posefully availed themselves of the privilege of doing business in Texas." *Id.* at 231.

2. Although *English & Smith* involved application of the Virginia long-arm statute in exercising personal jurisdiction over a California attorney in Virginia, the Virginia long-arm statute is nearly identical to that of Maryland. *See* Va.Code Ann. § 8.01–328.1. Moreover, as with the Maryland long-arm statute, "the purpose of the Virginia long-arm statute is to extend jurisdiction to the extent possible under the due process clause." *English & Smith*, 901 F.2d at 38.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To prevail on a motion to transfer venue under § 1404, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co., Inc.*, 198 F.Supp.2d 710, 711 (D.Md.2002) (internal quotation omitted). *See also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md.2002); *Dicken v. U.S.*, 862 F.Supp. 91, 92 (D.Md.1994). In order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship he "would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md.2002) (citing *Helsel*, 198 F.Supp.2d at 712). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a). *See Dow*, 232 F.Supp.2d at 499; *Helsel*, 198 F.Supp.2d at 712.

In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The host of convenience factors a court should consider include:

(1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md.2002) (quoting *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 622, n. 4 (D.Md.1998) (internal citations omitted)). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir.1991). *See also Stewart*, 487 U.S. at 29, 108 S.Ct. 2239 (§ 1404(a) intended "to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

### B. *Analysis*

Plaintiff contests Defendants' venue objections on the ground that its malpractice claims arise directly from the underlying Invitrogen litigation currently before this court. *See* Paper 7 at 10. The court agrees. The Invitrogen litigation has been before this court since its commencement in November 2001, more than two years ago. Defendants' various actions, relating to their decision to assign Pierce to that case and Pierce's acceptance of the assignment, all concerned and were directed toward the Invitrogen litigation, which was "anchored in Mary-

land." *Ciena Corp. v. Jarrard,* 203 F.3d 312, 318 (4th Cir.2000). Because the entire Invitrogen litigation has occurred and continues in this court, "any injuries suffered by the plaintiff as a result of the alleged malpractice were sustained in Maryland." *Dow,* 232 F.Supp.2d at 499–500; *see also Ciena Corp.,* 203 F.3d at 318 (alleged injuries that defendant "has caused or threatens to cause were or will be sustained in Maryland").

The arguments by Defendants in their declarations that venue is improper in Maryland—because (1) they all live and have their principal place of business in Utah and (2) the majority of relevant documents in this case are located either in Utah or California—are countered by the fact that this court already has adjudicated the disqualification motion giving rise to the instant case. Therefore, the court is well-served, in interest of justice, to honor Plaintiff's forum choice and retain this action. Accordingly, Defendants' motion to dismiss for improper venue or, in the alternative, to transfer venue under § 1404(a) to Utah will be denied.

## IV. Stating a Claim

### A. *Standard of Review*

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

■ In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

■ In a diversity action, this court applies only causes of action clearly existing under state law:

> As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule. To forecast a decision of the state's highest court we can consider, *inter alia:* canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered *dicta,* and the state's trial court decisions.

*Wells v. Liddy* 186 F.3d 505, 527–28 (4th Cir.1999) (internal citations omitted), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000). The court does not, however, have the discretion to change the law:

> If the law is not entirely clear, we must rule as it appears the state court would rule. In trying to determine how the highest state court would interpret the law, we "should not create or expand that State's public policy."

*Talkington v. Atria Reclamelucifers Fabrieken BV,* 152 F.3d 254, 260 (4th Cir. 1998) (internal quotation omitted).

### B. Analysis

 Defendants contend that Plaintiff has failed to state a claim for negligence against the firm Parsons (counts three and six) and two attorneys, Roche (count four) and Wikstrom (count five).[3] To state a claim for negligence or malpractice against an attorney in Maryland, Plaintiff "must allege: 1) the attorney's employment; 2) his neglect of a reasonable duty; and 3) loss to the client proximately caused by that neglect of duty." *Dow,* 232 F.Supp.2d at 495 (quoting *Roginsky v. Blake,* 131 F.Supp.2d. 715, 719 (D.Md.) (internal citations omitted), *aff'd,* 238 F.3d 414, 2000 WL 1853370 (4th Cir.2000) (Table)).

 In Maryland, an attorney "only owes a duty to his clients or third party beneficiaries of the attorney-client relationship." *Schatz v. Rosenberg,* 943 F.2d 485, 492 (4th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Thus, a plaintiff must, as part of a claim, allege the existence of "an employment relationship" with the attorney. *Wong v. Aragona,* 815 F.Supp. 889, 896 (D.Md.1993) (quoting *Flaherty v. Weinberg,* 303 Md. 116, 134, 492 A.2d 618, 627 (1985)), *aff'd,* 61 F.3d 902 (4th Cir.1995) (Table). *Accord, Murphy v. Comptroller of the Treasury,* 207 F.Supp.2d 400, 403–04 (D.Md.2002) (plaintiff must "prove an employment relationship with the attorney before an action can be maintained"). Ordinarily, such an allegation would include "an offer or request by the client for legal services and an acceptance of the offer by the attorney." *Wong,* 815 F.Supp. at 896 (internal quotation omitted).

 In the instant case, Plaintiff has not alleged that it ever consulted, hired or retained the law firm Parsons or attorneys Roche and Wikstrom for legal representation. Pierce is the only defendant who at any time served as legal counsel for Plaintiff.

Plaintiff points to *Schatz* for the proposition that "[a]ttorney liability to third parties should not be expanded beyond liability for conflicts of interest." *Schatz,* 943 F.2d at 493.[4] However, the *Schatz* court made this statement in its discussion of an attorney's purported "duty to disclose misrepresentations to innocent third parties on the basis of public policy," ultimately rejecting the plaintiffs' argument that urged such a duty. *Id.* at 492–93 (holding that defendant law firm did not have a duty to disclose to plaintiffs "because plaintiffs were neither clients nor third party beneficiaries of the attorney-client

---

**3.** Defendant Pierce has not moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), but instead she seeks—along with the other Defendants—dismissal for lack of personal jurisdiction or, in the alternative, transfer of venue to Utah.

**4.** The *Schatz* court cites to *Flaherty* as support for this proposition. Although the *Flaherty*

court noted that an attorney may "ordinarily not represent or act for conflicting interests in a transaction," it offered the statement to support its conclusion that the third party beneficiary exception, *see infra,* "should have limited application in adversarial proceedings." *Flaherty,* 492 A.2d at 626.

relationship"). Indeed, in legal malpractice cases, Maryland appears to adhere to the strict privity rule and recognizes the third party beneficiary theory as "[t]he sole exception." *Flaherty,* 492 A.2d at 625; *see also Schatz,* 943 F.2d at 492.[5] That exception plainly is not applicable here.

██ Plaintiff cites to Rule 1.9 of the Maryland Lawyers' Rules of Professional Conduct (MLRPC), which prohibits an attorney from representing a client with interests materially adverse from those of a former client absent waiver, as the basis for its legal malpractice claims. *See* Paper 7 at 8. It is true that in Maryland, courts have stated that MLRPC "constitutes an expression of public policy having the force of law." *Post v. Bregman,* 349 Md. 142, 163, 707 A.2d 806, 816 (1998).[6] What is not so clear is whether "public policy having the force of law" provides the basis for a claim here. Given the limitations on this court's function to find and apply Maryland law, not to create it, the court must conclude that it does not.

Interestingly, there is a decision of the Court of Special Appeals, in which Chief Judge Murphy suggested that, based on *Post,* when an arbitration agreement does not provide for the imposition of sanctions upon a lawyer for multiplicative and wasteful conduct: "Maryland law entitles the party who has been victimized by such misbehavior to assert a separate civil action, against the offending party and/or the attorney for the offending party, in order to recoup reasonable—but needlessly incurred—costs and counsel fees." *MCR of America, Inc. v. Greene,* 148 Md.App. 91, 122, 811 A.2d 331, 349 (2002) (Murphy, C.J., concurring). In essence, Judge Murphy concludes that the public policy would be given effect if there were no other remedy. However, no Maryland court has yet so held. In this case, moreover, there was a possible federal remedy for the alleged conduct of Defendants in this court under 28 U.S.C. § 1927, which provides: Any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *See also DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir.1999) ("The unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings ... [and] focuses on the conduct of the litigation and not on its merits") (emphasis in original), *cert. denied,* 529 U.S. 1033, 120 S.Ct. 1451, 146 L.Ed.2d 337 (2000).

## V. Conclusion

For the foregoing reasons, the court will deny the motion concerning personal jurisdiction and venue as to all defendants and will grant the motion to dismiss as to the law firm Parsons and attorneys Roche and Wikstrom, under Fed.R.Civ.P. 12(b)(6). A separate Order will follow.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 29th day of April, 2004, by the United States District Court for the District of Maryland, ORDERED that:

---

5. In *Parler & Wobber v. Miles & Stockbridge, P.C.,* 359 Md. 671, 694 n. 8, 756 A.2d 526, 539 n. 8 (Md.2000), the Court of Appeals again reserved for another day the question of whether an attorney's duty of care extends beyond contractual privity.

6. In *Post,* the court reached this conclusion in the context of a dispute over a fee-splitting arrangement between two attorneys, who were opposing parties in the action. This underlying breach of contract context is inapposite to that of the instant case.

1. The motion by Defendants to dismiss or, in the alternative, to transfer venue (Paper 6), BE, and the same hereby IS, GRANTED IN PART AND DENIED IN PART;

2. The portion of the motion pertaining to personal jurisdiction and venue BE, and the same hereby IS, DENIED;

3. The motion of Parsons Behle & Latimre, Francis M. Wikstrom and Kent O. Roche to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, GRANTED;

4. Counts three through six of Plaintiff's complaint BE, and the same hereby ARE, DISMISSED; and

5. The Clerk will transmit copies of this Memorandum Opinion and this Order to counsel for the parties.