**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAPTAIN SHERIFF SAUDI,
  *Plaintiff-Appellant,*

v.

NORTHROP GRUMMAN CORPORATION;
NEWPORT NEWS SHIPBUILDING,
INCORPORATED; KEPPEL GROUP
CORPORATION, d/b/a Keppel Offshore
& Marine, Limited, d/b/a Keppel
Shipyard (Pte), Ltd.,
  *Defendants-Appellees.*

No. 04-2444

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry Coke Morgan, Jr., Senior District Judge.
(CA-03-299-2)

Argued: September 20, 2005

Decided: October 26, 2005

Before WILKINSON and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Williams and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Joe Alfred Izen, Jr., Bellaire, Texas, for Appellant. Roy
Grant Decker, Jr., MILES & STOCKBRIDGE, McLean, Virginia;

John Morgan Ryan, VENDEVENTER BLACK, L.L.P., Norfolk, Virginia, for Appellees. **ON BRIEF:** William L. Stauffer, Jr., MILES & STOCKBRIDGE, McLean, Virginia, for Appellees Northrop Grumman Corporation and Newport News Shipbuilding, Incorporated; Katharina K. Brekke, VANDEVENTER BLACK, L.L.P., Norfolk, Virginia, for Appellee Keppel Group Corporation, dba Keppel Offshore & Marine, Limited, dba Keppel Shipyard (Pte), Ltd.

---

## OPINION

WILKINSON, Circuit Judge:

Captain Sheriff Saudi brings this admiralty action seeking recovery for a personal injury on the high seas. Saudi's suit against the Keppel Group Corporation was dismissed for lack of personal jurisdiction. His suit against Newport News Shipbuilding and Drydock Company and the Northrop Grumman Corporation proceeded to a bench trial, at the conclusion of which the district court granted judgment as a matter of law to the defendants. On appeal, Captain Saudi raises a host of jurisdictional and trial management issues.

We hold that Federal Rule of Civil Procedure 4(k)(2) cannot be used to obtain personal jurisdiction over a foreign corporation where, as here, the foreign corporation's contacts with the United States fail to establish any proper basis for specific or general jurisdiction. With respect to the various trial management issues raised by Captain Saudi, we hold that far from abusing its discretion, the district court exercised commendable restraint. Litigants who fail to comply with court scheduling and discovery orders should not expect courts of appeal to save them from the consequences of their own delinquence.

I.

On May 17, 1999, Captain Sheriff Saudi was injured when a port-side hose crane affixed to the vessel *S/T Marine Atlantic* collapsed as it was transferring him in a basket to another ship. Captain Saudi fell approximately fifty feet into the Gulf of Mexico. He claims that he suffered injuries when the crane's mechanical arm, or jib, detached from the crane and landed on him.

In this case, Captain Saudi brings suit against Keppel, Newport News Shipbuilding, and Northrop Grumman, alleging negligence, products liability, and breach of an implied warranty of merchantability.[1] In 1979, Newport News Shipbuilding constructed the *S/T Marine Atlantic* and attached the crane to the vessel. Northrop Grumman is the parent company of Newport News Shipbuilding. In 1994, Keppel, a Singapore shipyard, refurbished the *S/T Marine Atlantic* and crane in Singapore.

The district court dismissed the suit against Keppel for lack of personal jurisdiction and in a ruling from the bench also refused to transfer venue to Texas. The suit against Newport News Shipbuilding and Northrop Grumman went to trial in October 12-13, 2004. At trial, the district court excluded two of Captain Saudi's design experts after concluding that he had violated a court order limiting his use of expert witnesses. This order had been put in place as a penalty for Captain Saudi's earlier failure to provide expert witness disclosures, as required by Federal Rule of Civil Procedure 26(a)(2)(B). At trial, the district court also denied as untimely Captain Saudi's request to subpoena two adverse witnesses. At the conclusion of the trial, it granted the defendants' motion for judgment as a matter of law on partial findings pursuant to Rule 52(c).

II.

We first address Captain Saudi's claims pertaining to Keppel. The district court's determination that it lacked personal jurisdiction over Keppel is reviewed de novo, but factual findings supporting a jurisdictional decision are reviewed for clear error. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). The district court's denial of Captain Saudi's motion to transfer venue is reviewed for abuse of discretion. *See Nichols v. G.D.*

---

[1]Captain Saudi has been no stranger to the federal courts. He has brought various unsuccessful suits arising out of this injury in several jurisdictions. *See Saudi v. Acomarit Mars. Servs., S.A.*, 114 Fed. App. 449 (3d Cir. 2004), *cert. denied*, 125 S. Ct. 1850 (2005); *Saudi v. Ship Switzerland*, 93 Fed. App. 519 (4th Cir. 2004); *Saudi v. S/T Mar. Atl.*, 81 Fed. App. 505 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 2916 (2004); *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128 (E.D. Wisc. 2003).

*Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993); *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

A.

Captain Saudi contends that the district court erred in concluding that it lacked personal jurisdiction over Keppel. Saudi's only asserted basis for jurisdiction is Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) is in essence a federal long-arm statute. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999). It provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

In order to obtain jurisdiction under Rule 4(k)(2), therefore, three requirements must be met. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215 (4th Cir. 2002). First, the suit must arise under federal law. Fed. R. Civ. P. 4(k)(2). Second, the defendant must not be subject to personal jurisdiction in any state. *Id.*; *Base Metal Trading*, 283 F.3d at 215. Third, the defendant must have contacts with the United States "consistent with the Constitution and laws of the United States." Fed. R. Civ. P. 4(k)(2).

We conclude that Keppel is not subject to jurisdiction under Rule 4(k)(2) because Captain Saudi has clearly not satisfied the third part of this test. *New Wellington Fin. Corp.*, 416 F.3d at 294 (plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence). In the context of 4(k)(2), the requirement that Keppel's contacts be "consistent with the Constitution and laws of the United States" is founded upon the Due Process Clause of the Fifth Amendment. *See Mwani v. Bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005). This Clause ensures that a defendant has fair warning before it is subjected to the coercive power of a court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (discussing the Due

Process Clause of the Fourteenth Amendment). Thus, while Rule 4(k)(2) is designed to facilitate obtaining jurisdiction over foreign defendants, it does not operate to relax the requirement that the defendant's contacts with the forum be constitutionally sufficient.

Captain Saudi argues that Keppel is subject to both specific and general jurisdiction. A court may exercise specific jurisdiction "[w]hen the cause of action arises out of the defendant's contacts with the forum." *Base Metal Trading*, 283 F.3d at 213. General jurisdiction is available if Keppel's contacts with the United States are "'continuous and systematic.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Captain Saudi alleges jurisdictional contacts with New Jersey and Texas. First, he maintains that Marine Transport Lines (MTL), a New Jersey corporation, and its Chief Engineer, Richard Farman, oversaw the refurbishment of the *S/T Marine Atlantic* in Keppel's Singapore shipyard in 1994. Specifically, he contends that Mr. Farman supervised the refurbishment from New Jersey, that MTL representatives directly observed Keppel's work in Singapore, and that MTL personnel handled the payment for Keppel's services on behalf of the ship's owner. Captain Saudi also contends that Keppel and MTL were involved in a joint venture. Second, he notes that Keppel owns a subsidiary shipyard in Brownsville, Texas.

It is clear that the district court did not have specific jurisdiction over Keppel. To the extent that Keppel has purposefully availed itself of the United States with its New Jersey and Texas contacts, it is certainly not the case that "the plaintiff['s] claims arise out of those activities directed at the [United States]." *New Wellington Fin. Corp.*, 416 F.3d at 295. Captain Saudi's cause of action arises from Keppel's alleged misconduct either in Singapore or on the high seas. Captain Saudi identifies no tortious conduct *by Keppel* in New Jersey and these New Jersey contacts therefore do not "provide the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Nor does Keppel's Texas shipyard provide any foundation for specific jurisdiction. Captain Saudi has provided no evidence that this shipyard had anything to do with his injuries or the reconstruction of the *S/T Marine Atlantic*.

The district court also lacked general jurisdiction because on the record before it Keppel's contacts with the United States are not "continuous and systematic." "[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) (internal quotation marks omitted). Captain Saudi provides virtually no evidence that Keppel maintains a continuous presence in the United States, and instead offers only isolated contacts with Texas and New Jersey. Contrary to Captain Saudi's assertions, there is nothing to suggest that Keppel and MTL were part of a joint venture. MTL hired Keppel to reconstruct the vessel, and MTL monitored Keppel's work. Surely evidence of a single, short-term contractual relationship does not rise to the level of "continuous and systematic" contact. *See Nichols*, 991 F.2d at 1200 (single contract insufficient to generate general jurisdiction, even in combination with a series of other contacts). Nor can Keppel's Texas shipyard provide the basis for general jurisdiction, because it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003); *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *see also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61-62 (4th Cir. 1993). Captain Saudi has provided no evidence of the nature of the relationship between Keppel and its Texas subsidiary that would justify an exception to this general rule. *See Mylan Labs.*, 2 F.3d at 61 (noting various factors, such as significant degree of control, that may rebut the general rule).[2]

---

[2] Captain Saudi also contends that the district court erred in refusing to impose discovery sanctions on Keppel for failure to properly respond to interrogatories querying its jurisdictional contacts. The district court did not abuse its discretion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). The district court determined that Keppel had not made false or misleading statements, and that its answers to Saudi's interrogatories complied with Federal Rule of Civil Procedure 33. It also held that Captain Saudi had not attempted to confer with Keppel after determining that certain answers were allegedly incomplete, as required by Rule 37(a)(2)(B).

B.

Captain Saudi next challenges the district court's refusal to transfer venue to Texas pursuant to 28 U.S.C. § 1406(a) (2000). Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum. *See In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002). According to Saudi, a transfer was warranted here because Keppel may be subject to personal jurisdiction in Texas and the statute of limitations would expire if this case were dismissed and he were forced to refile.

We find this contention unpersuasive, because Captain Saudi has never shown that suit against Keppel "could have been brought" in Texas. 28 U.S.C. § 1406(a); *see also City of Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 489 (4th Cir. 1985) ("Transfer, of course, can be made only to a district where the action could have been brought."). As we concluded above, on the record before us Keppel's contacts with Texas and the United States as a whole are constitutionally insufficient to serve as the basis for either specific or general jurisdiction. Captain Saudi cites no authority for the proposition that a suit must be transferred upon a mere assertion of potential jurisdiction that has been foreclosed by the record before the transferor court. Captain Saudi also never filed a motion to transfer and only raised the issue at a hearing, after the district court determined that it lacked Rule 4(k)(2) jurisdiction over Keppel. We have recognized that "the interest of justice" standard provides district courts with broad discretion in denying a request for a transfer. *See, e.g.*, *Nichols*, 991 F.2d at 1200-01 (wide discretion to deny transfer where attorney "could reasonably have foreseen" that he filed suit in an improper forum). The district court did not abuse its discretion here.

III.

We next address Captain Saudi's claims relating to Newport News Shipbuilding and Northrop Grumman. The district court's decision to

exclude two of Captain Saudi's expert witnesses is reviewed for abuse of discretion. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). Its denial of Captain Saudi's request to subpoena adverse witnesses is also reviewed under this same standard. *See Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004).

It must be noted at the outset that Captain Saudi's actions in this litigation presented particular challenges for the district court. The record is replete with instances when Captain Saudi failed to abide by the district court's rules, including missing deadlines, filing briefs on the day of hearings, and seeking the assistance of counsel while claiming to be proceeding pro se. Our consideration of the district court's various decisions is guided by the necessary deference owed to district courts in the context of trial management, and by our view that the district court was exceedingly patient in this trying situation.

A.

Captain Saudi contends that the district court erred in excluding at trial two of his expert witnesses, George Moran and Lee Wyman. Consideration of this claim requires a fuller exposition of the course of litigation in this case. Captain Saudi provided a Designation of Expert Witnesses on June 10, 2004, listing thirty names. He did not, however, timely file Rule 26(a)(2)(B) expert witness disclosures, as required by the district court's Scheduling Order. Rule 26(a)(2)(B) reports include, among other things, the expert's opinions and basis therefor, his qualifications, and any past experience as an expert witness. In an August 5 order, the district court determined that as a sanction for failing to timely file Rule 26 disclosures, Captain Saudi "shall identify no more than three (3) expert witnesses" in the field of defective design. It also granted him an additional week to provide the Rule 26 expert witness reports. Two of the experts Saudi eventually selected, Moran and Wyman, were not among the original thirty experts he had listed in his June 10 Designation of Expert Witnesses.

At the October trial, the defendants asked that Moran and Wyman be struck because Captain Saudi had violated the district court's order by selecting two experts from outside the original thirty in the Designation. By this time, the defendants had received the Rule 26 disclo-

sures for Moran and Wyman and had deposed both of them. The district court agreed with the defendants that the two experts should be excluded. It reasoned that it could have struck all of Captain Saudi's experts as a sanction for his failure to timely file Rule 26 reports, but had instead decided to limit him to three experts and grant him additional time. By selecting two experts not among the thirty included in the Designation, Captain Saudi had violated the court's order.

Captain Saudi contends that this was an abuse of discretion. He argues that when the district court limited him to three design experts, it did not also require that he select those experts from among the thirty listed in the original Designation. Specifically, he notes that the defendants raised this issue at a pretrial conference and the district court declined to decide the issue at that time. He also points to statements that the district court made at this pretrial conference and at trial that together suggest the court was uncertain whether Saudi was in fact limited to the thirty experts in his Designation.

Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." A district court may also impose "other appropriate sanctions." *Id.* Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, "[w]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *S. States Rack & Fixture*, 318 F.3d at 595 (internal quotation marks omitted).

This latitude is particularly appropriate here. The district court concluded that Captain Saudi had violated its August 5 order by selecting two witnesses not among the original thirty, and a district court's interpretation of its own order is entitled to deference. *Anderson v. Stephens*, 875 F.2d 76, 80 n.8 (4th Cir. 1989). To the extent the order is ambiguous, an examination of the record indicates that the district court intended to limit Captain Saudi to his initial Designation. *See In re Tomlin*, 105 F.3d 933, 940 (4th Cir. 1997) ("When an order is ambiguous, a court must construe its meaning, and in so doing may

resort to the record upon which the judgment was based.") (internal quotation marks omitted). By limiting him to three expert witnesses only, the district court was attempting to cabin Captain Saudi's use of witnesses and place reasonable limits on this freewheeling litigation. Allowing Saudi to select from outside of the initial list would have achieved precisely the opposite result.

We hasten to add that as the district court recognized, it could have struck at the outset all of Captain Saudi's expert witnesses as a sanction for his failure to timely file Rule 26 disclosures. This was the course pursued by the district courts in Captain Saudi's Wisconsin and Texas suits, when Captain Saudi similarly did not comply with Rule 26. *See Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wisc. 2003); *Saudi v. S/T Mar. Atl.*, 2000 WL 33993435 *4 (S.D. Tex. 2000). In this case, the district court generously granted Saudi additional time to file disclosures on three design experts. Saudi's current contention — that the district court order limiting him to three expert witnesses did not require him to select those witnesses from his original Designation — is only an issue because Captain Saudi failed to file Rule 26 disclosures and received initially a lenient response. The district court should not be a victim of its own lenity, nor should Captain Saudi capitalize on his noncompliance with the court's rules.

## B.

Captain Saudi lastly argues that the district court abused its discretion by denying as untimely his request to subpoena adverse witnesses. Captain Saudi sought these subpoenas during the trial, seeking to have the witnesses appear the next day. This was in clear violation of a local rule that requires service of subpoenas no less than fourteen days before trial. *See* E.D. Va. Local Civ. R. 45(E). The district court had also previously imposed limits on Captain Saudi's ability to obtain subpoenas after determining that he had used subpoenas to harrass defendants' corporate officers. In light of these facts, the district court did not abuse its discretion.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*