**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1050**

———————

MOBILIZATION FUNDING, LLC,

> Plaintiff,

v.

BARBARA STOKES; SCOTT STOKES; GSH OF ALABAMA, LLC,

> Defendants – Appellants,

and

JESSUP CONSTRUCTION, LLC; ANTHONY SETLIFF; KIMBERLY SETLIFF,

> Defendants,

v.

WESTERFELD CONSTRUCTION BY GLICK, LLC,

> Third Party Defendant – Appellee.

———————

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Richard Mark Gergel, District Judge. (9:24-cv-03592-RMG)

———————

Argued: October 21, 2025                    Decided: December 29, 2025

———————

Before HARRIS, HEYTENS, and BENJAMIN, Circuit Judges.

———————

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Heytens and Judge Benjamin joined.

---

**ARGUED:**  Robert Foust Parsley, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellants.  Mark Anthony Bible, Jr., KENISON DUDLEY CRAWFORD, LLC, Greenville, South Carolina, for Appellee.  **ON BRIEF:** Joseph Paul Schilleci, Jr., SCHILLECI & TORTORICI, P.C., Birmingham, Alabama, for Appellants.

---

PAMELA HARRIS, Circuit Judge:

Westerfeld Construction, a Florida-based general contractor, was sued in federal district court in South Carolina. At issue on appeal is whether Westerfeld, which does no business in South Carolina, is nevertheless subject to personal jurisdiction in that state. The district court held that it had neither general nor specific jurisdiction over Westerfeld and dismissed the claims against it. We agree that there are no factual allegations plausibly connecting Westerfeld to South Carolina and thus affirm the judgment of the district court.

## I.

This case, arising from a Florida-based construction project, involves multiple parties with a complex web of relationships. For context, we begin by outlining those relationships. We then describe the dispute that brought this case to court and turn finally to the district court decision dismissing Westerfeld from the action for lack of personal jurisdiction in South Carolina.

## A.

Westerfeld Construction by Glick, LLC, was retained by the state of Florida to serve as the general contractor on the "Rebuild Florida Project," a state-funded effort to rebuild homes damaged by hurricanes. Everything about Westerfeld and its work on the Rebuild Florida Project is Florida-centered: Westerfeld is headquartered in Florida and was hired to perform work in Florida, Florida law governs Westerfeld's contract with Florida, and any contract disputes must be litigated in Florida.

3

Westerfeld retained Jessup Construction, LLC, as a subcontractor on the Rebuild Florida Project. At around the same time, Jessup entered into a joint venture agreement with GSH of Alabama, LLC. Jessup and GSH agreed to jointly perform services on the Rebuild Florida Project and to split the proceeds. Neither Jessup nor GSH is headquartered in South Carolina, and there is no indication that either did any business in South Carolina related to this case.

South Carolina finally enters the story a few months later, when Jessup got a $5.8 million loan from Mobilization Funding, LLC, to finance its work on the Rebuild Florida Project. Mobilization Funding, which does have a presence in South Carolina, is a contract-financing company that makes loans to construction contractors to cover their expenses and takes as collateral an interest in the underlying contracts. Here, Mobilization Funding also agreed with Jessup to perform certain project accounting services, such as managing the loaned funds and making loan payments to itself as Jessup's contract payments came in from Westerfeld.

It is the contracts associated with this loan – the "Loan Contracts" – that brought this case to South Carolina. Those contracts tie together Mobilization Funding, Jessup, and GSH, which served as a corporate guarantor of the loan, as well as Barbara and Scott Stokes, GSH's sole members, who served as personal guarantors of the loan. Each of the Loan Contracts – a promissory note, a security agreement, and guarantor agreements – provides that it is governed by South Carolina law and that the parties consent to jurisdiction and venue in South Carolina for any contract-related disputes. Some of the

Loan Contracts state that Mobilization Funding is headquartered in South Carolina, which would explain these South Carolina-focused provisions.

But, critically, Westerfeld is not a party to any of the Loan Contracts that link this suit to South Carolina. The only thing tying Westerfeld to the Loan Contracts, at least on their face, is the fact that Jessup – one of Westerfeld's subcontractors on the Rebuild Florida Project – is a signatory.

**B.**

The parties' dispute began when Mobilization Funding notified Jessup and GSH that Jessup had defaulted on its loan. It then sued Jessup, GSH, and the loan guarantors in South Carolina state court, seeking the money owed under the Loan Contracts. GSH and its members, the Stokeses, removed the case to federal district court in South Carolina. And then, along with its answer to Mobilization Funding's complaint, GSH (joined by the Stokeses) brought counterclaims against Mobilization Funding, crossclaims against Jessup, and – directly relevant here – third-party claims against Westerfeld.

In its claims against Westerfeld, GSH alleged that Westerfeld conspired with Mobilization Funding to defraud Jessup and GSH. First, according to GSH, Westerfeld and Mobilization Funding conspired to induce Jessup and GSH to borrow from Mobilization Funding and use its accounting services. Then, GSH alleged, Westerfeld and Mobilization Funding worked together to divert Jessup's payments from the Rebuild Florida Project for their own benefit, rather than using them to pay down the loan balance as the Loan Contracts stated they would – leaving GSH and Jessup, to their surprise, with over $7 million in loan obligations. Working from that basic theory, GSH brought multiple

5

third-party claims against Westerfeld, including claims for fraudulent misrepresentation and concealment, deceptive trade practices, breach of fiduciary duty, and civil conspiracy.

Westerfeld moved to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that the South Carolina district court lacked personal jurisdiction over it. In the decision now on review, the district court granted that motion, concluding that it could exercise neither general nor specific personal jurisdiction over Westerfeld in South Carolina. *Mobilization Funding II, LLC v. Jessup Constr., LLC*, 2024 WL 4769774 (D.S.C. Nov. 13, 2024).

Because neither party sought an evidentiary hearing, the district court applied the "prima facie approach" to Westerfeld's Rule 12(b)(2) motion. Under that approach, as the district court explained, it was up to GSH – the third-party plaintiff asserting jurisdiction – to "proffer[] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Id.* at *2 (citation and internal quotation marks omitted); *see Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). In determining whether GSH had met that burden, the court recognized, it was required to accept as true the facts put forward by GSH, and in considering affidavits submitted by the parties, to resolve all factual disputes in GSH's favor. 2024 WL 4769774, at *2. But to make its prima facie showing, GSH could not "rely solely on conclusory averments" and was instead required to "adduce evidence of specific facts." *Id.* (citation and internal quotation marks omitted).

First, the district court held, it was clear that it lacked general personal jurisdiction over Westerfeld. *Id.* at *4. GSH had asserted no facts from which the court could conclude

6

that Westerfeld, a Florida construction company, engaged in "continuous and systematic" activities in South Carolina, as would be necessary to establish general jurisdiction. *Id.* (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)). As the district court noted, an affidavit submitted by Westerfeld attested, without dispute, that Westerfeld is not registered to do business in South Carolina and does no business there; has no offices, bank accounts, or other property in South Carolina; and has no agents or employees in the state. *Id.* And GSH had pointed to "no activities by Westerfeld in South Carolina at all." *Id.*

The district court turned next to specific personal jurisdiction, and whether Westerfeld, through its conduct related to this litigation, had created "sufficient contacts" with South Carolina to justify an exercise of jurisdiction. *Id.* at *4–5. To make this showing before the district court, GSH relied primarily on a Funds Control Agreement between Jessup and Mobilization Funding, signed after the initial Loan Contracts and while the Rebuild Florida Project was underway. That Agreement, as the district court explained, governed the disbursement of funds earned by Jessup for its work on the Project, providing that Westerfeld would direct those funds to accounts from which Mobilization Funding could debit loan payments and Westerfeld could pay out project-related costs owed by Jessup. *Id.* at *4. But Westerfeld, as the district court emphasized, was not itself a party to the Funds Control Agreement. *Id.*

Nevertheless, GSH argued, the Funds Control Agreement sufficiently connected Westerfeld to South Carolina for purposes of specific jurisdiction. First, GSH contended, Westerfeld should be treated as if it were a party to the Funds Control Agreement because

7

that Agreement gave Westerfeld control over the distribution of funds and then indemnified it against claims related to those distributions. And then, to link the Funds Control Agreement to South Carolina, GSH argued that the Agreement should be read as incorporating by reference the Loan Contracts and their South Carolina choice-of-law and venue provisions.

The district court rejected this effort to "connect the dots across a web of agreements." 2024 WL 4769774, at *4. The central problem with GSH's position, the court explained, was that it relied on the conduct of parties other than Westerfeld – specifically, on "contracts entered into by [Westerfeld's] subcontractor [Jessup] with Mobilization, a South Carolina entity." *Id.* at *5. But as the Supreme Court has made clear, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). It followed, the district court reasoned, that the unilateral decisions by Jessup and Mobilization Funding to enter into the Loan Contracts and Funds Control Agreement could not justify the exercise of jurisdiction over Westerfeld. *Id.*

Finally, the district court addressed GSH's conspiracy allegations, which painted Westerfeld, along with alleged co-conspirator Mobilization Funding, as having played an active role in bringing about the Loan Contracts and the Funds Control Agreement. Those allegations, if supported, could tie Westerfeld more directly to the Loan Contracts and their South Carolina-focused provisions. But the district court found GSH's allegations too

8

conclusory to make out a prima facie case for jurisdiction.  *Id.* ("GSH offers no evidence to support its conclusory allegation that Westerfeld is 'responsible for the acts and contracts formed by other conspirators[.]'")

Accordingly, the district court granted Westerfeld's motion to dismiss the third-party complaint against it for lack of jurisdiction.  *Id.*  The court then certified its order as a final judgment under Federal Rule of Civil Procedure 54(b), and this timely appeal followed.

## II.

As the district court explained, when personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, we ask whether the party asserting jurisdiction – here, GSH – has met its burden of establishing a prima facie case of jurisdiction.  *Hawkins*, 935 F.3d at 226.  This analysis "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)," in that we assess whether the facts put forward by the party asserting jurisdiction, which we accept as true, meet that party's burden to make out the prima facie case.  *Id.*  The existence of a prima facie case of jurisdiction is a question of law we review de novo.  *Id.* at 226–27.

The background law here is undisputed.  South Carolina's long-arm statute, S.C. Code § 36-2-803, extends to the outer limits of the Fourteenth Amendment's Due Process Clause, *see Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005), so whether the district court, sitting in diversity jurisdiction, could exercise personal jurisdiction over Westerfeld turns on the constitutional standard, *see Perdue Foods LLC v.*

*BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016). And under the Due Process Clause, it is well established that Westerfeld could be subject to suit in South Carolina only if it had "minimum contacts" with that state so that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Hawkins*, 935 F.3d at 228 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As the district court recognized, two kinds of personal jurisdiction can satisfy this requirement. If a defendant is "at home" in the forum state – if it has "continuous and systemic" contacts with the state – then a court may exercise general jurisdiction over it. *Id.* at 228–29; *Perdue Foods*, 814 F.3d at 188. Here, the district court briskly determined that there was no conceivable basis for exercising general jurisdiction over Westerfeld in South Carolina, and GSH does not challenge that holding on appeal. 2024 WL 4769774, at *4.

Instead, this appeal turns on whether the district court could exercise specific jurisdiction over Westerfeld – that is, jurisdiction based on contacts between Westerfeld and South Carolina related to this lawsuit. *Hawkins*, 935 F.3d at 229. A three-prong standard governs the inquiry into specific jurisdiction, analyzing "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020) (citation and internal quotation marks omitted). Here, the district court began and ended with the first factor – the degree to which Westerfeld "expressly aimed" some conduct related to this

10

case at South Carolina, *see Hawkins*, 935 F.3d at 230 (quoting *Walden v. Fiore*, 571 U.S. 277, 288 n.7 (2014)) – and we do the same. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (courts should consider second and third specific jurisdiction factors only if the first is satisfied).

### A.

We may dispense briefly with one of GSH's arguments, addressed already by the district court. On appeal, GSH reprises its argument that Westerfeld deliberately affiliated itself with South Carolina through its participation in the Funds Control Agreement (which it did not sign), which in turn incorporated the Loan Documents (which Westerfeld also did not sign) and their South Carolina choice-of-law and venue provisions. But as the district court explained, the inquiry here focuses only on connections with the forum state created by the defendant, Westerfeld. The "unilateral activity" of third parties – the Funds Control Agreement entered into by Mobilization Funding and Jessup, and the Loan Contracts agreed to by Mobilization Funding, Jessup and GSH – may tie those third parties to South Carolina, but it cannot be the basis for asserting jurisdiction over Westerfeld. *See Mobilization Funding*, 2024 WL 4769774, at *5 (quoting *Helicopteros Nacionales de Colombia,* 466 U.S. at 417). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the . . . attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citation and internal quotation marks omitted).

We need not pass on GSH's claim that the Funds Control Agreement qualifies as a "contact" with South Carolina because it impliedly incorporates the South

11

Carolina-focused provisions of the Loan Contracts. Regardless, that Agreement cannot support jurisdiction over Westerfeld because any such contact was not the result of Westerfeld's own conduct. Westerfeld never signed the Funds Control Agreement. And although GSH argues that the Agreement's provision releasing Westerfeld from liability makes Westerfeld a third-party beneficiary – a question we need not address – GSH's complaint does not allege that Westerfeld asked for that provision to be included. As the district court explained, the Funds Control Agreement – including its grant of "indemnity obligations to Jessup in favor of Westerfeld" – reflect only "unilateral activity" by third parties. 2024 WL 4769774, at *5.

In short, for the reasons given by the district court, we agree that GSH cannot rely on the Funds Control Agreement to establish specific jurisdiction over Westerfeld. The relevant "minimum contacts" are those created by Westerfeld with South Carolina, not those created by Jessup and Mobilization Funding. And no part of Westerfeld's own conduct related to the Rebuild Florida Project ties Westerfeld to South Carolina.

**B.**

GSH offers another theory of specific jurisdiction on appeal. This one focuses not on Westerfeld's purported contacts with South Carolina, but on Mobilization Funding's. Mobilization Funding, GSH argues, has ample case-related contacts with South Carolina – including the Loan Contracts, signed by Mobilization Funding, with their South Carolina choice-of-law and venue provisions. And those Mobilization Funding contacts may be *imputed* to Westerfeld, GSH says, because Westerfeld and Mobilization Funding are co-conspirators, having worked together to fraudulently induce GSH's agreement to the Loan

12

Contracts and then to divert funds that should have been used to make Jessup's loan payments.

What GSH is invoking, at least on appeal, is the "conspiracy theory of jurisdiction," under which a defendant may be "imputed with constitutionally sufficient contacts" with a forum state not through its own actions, but "through the actions of [its] alleged coconspirators." *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).[1] To succeed under this theory, GSH would have to "make a *plausible* claim (1) that a conspiracy existed; (2) that [Westerfeld] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy" – here, Mobilization Funding's activities – "had sufficient contacts with [South Carolina] to subject that conspirator to jurisdiction in [South Carolina]." *Id.* (emphasis added). Because GSH has not plausibly alleged Westerfeld's involvement in a conspiracy with Mobilization Funding, it cannot establish jurisdiction under the conspiracy theory.

Though our court has endorsed the conspiracy theory of personal jurisdiction, we have emphasized the need to "plead with particularity" concrete facts supporting the existence of a conspiracy. *Id.* (citation omitted). As the district court recognized, a plaintiff

---

[1] We have doubts as to whether GSH preserved this argument for appeal. GSH did refer to its conspiracy allegations before the district court. But its argument there was that Westerfeld, in concert with Mobilization Funding, *itself* created significant contacts with South Carolina; it did not argue for *imputation* of Mobilization Funding's contacts to Westerfeld or invoke our precedents on conspiracy theory jurisdiction. Westerfeld, however, has not raised a waiver objection. And the district court did address GSH's conspiracy allegations – rejecting them as too conclusory – albeit in a slightly different context. 2024 WL 4769774, at *5. For those reasons, we decline to rest our decision on waiver principles. *See United States v. Ebert*, 61 F.4th 394, 405 n.6 (4th Cir. 2023).

13

asserting jurisdiction "cannot rely solely on conclusory averments, but must adduce evidence of specific facts." 2024 WL 4769774, at *2 (citation omitted). And to establish jurisdiction under the conspiracy theory, those specific allegations must add up to more than a "logical possibility" of a conspiracy; if the facts alleged "could equally describe arms-length transactions" between the purported co-conspirators, then the party asserting jurisdiction has not met its burden. *Unspam*, 716 F.3d at 330. If all of this sounds familiar, it is because of the well-established rule that conclusory allegations of an agreement or conspiracy in restraint of trade are insufficient to survive review under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). By the same token, a "naked assertion of conspiracy" offered to establish jurisdiction "stops short of the line between possibility and plausibility," *id.* at 557, and cannot satisfy the requirements of Rule 12(b)(2).

Like the district court, we think GSH has offered only a "conclusory allegation" of a conspiracy that "falls far short of the prima facie showing necessary to defeat Westerfeld's Rule 12(b)(2) motion." 2024 WL 4769774, at *5. Before this court, GSH's conspiracy theory focuses on a "referral partnership program" advertised by Mobilization Funding on its website, under which general contractors like Westerfeld are paid a commission when they refer subcontractors like Jessup and GSH to Mobilization Funding for its loan services. But on its face, such a program could "equally" reflect "arms-length transactions . . . in the ordinary course of business," rather than any kind of illicit conduct. *See Unspam*, 716 F.3d at 330; *see also Twombly*, 550 U.S. at 557 (describing the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with)

14

agreement"). And any inference that Westerfeld conspired with Mobilization Funding to bring in Jessup and GSH through the "referral partnership program" in pursuit of a commission is defeated by GSH's complaint itself: According to that complaint, GSH already had a working relationship with Mobilization Funding when it first became involved with Westerfeld, and Mobilization Funding introduced GSH and Jessup to Westerfeld – not the other way around. Similarly, though GSH now describes Westerfeld as collaborating with Mobilization Funding to convince GSH and Jessup to agree to the Loan Contracts, when its complaint discusses the loan in question, it is devoid of any allegation that Westerfeld actually made even a single representation to GSH or Jessup about that loan.

We could go on, but the upshot would remain the same. GSH alleges a conspiracy between Westerfeld and Mobilization Funding, but its allegations are conclusory and speculative. Its "overly general" allegation of a conspiracy in connection with the referral program cannot "satisfy the requirements for establishing a conspiracy theory of personal jurisdiction," *Unspam*, 716 F.3d at 330, and the district court did not err in dismissing GSH's third-party complaint against Westerfeld for lack of personal jurisdiction.[2]

---

[2] Though not the focus of its appeal, GSH also takes issue with the district court's disposition of two procedural matters: first, the court's denial as moot of GSH's motion to strike one of the affidavits submitted by Westerfeld; and second, its failure to address GSH's alternative request for jurisdictional discovery. We review both decisions for abuse of discretion, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 702 (4th Cir. 2007); *Carefirst of Md.*, 334 F.3d at 396, 402–03, and see no such abuse here. As the district court explained, it did not rely on the disputed affidavit for its jurisdictional analysis, instead conducting "its own review of the record," rendering GSH's challenge moot. 2024 WL 4769774, at *5. And because we agree with the district court that GSH has offered "only speculation (Continued)

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*.

---

or conclusory assertions about contacts with [the] forum state," it follows that the court had no obligation to allow for jurisdictional discovery. *See Carefirst of Md.*, 334 F.3d at 402–03.